**Dawn SNELL, Plaintiff,**

v.

**RENO HILTON RESORT, Defendant.**

**No. CV–N–93–472–DWH.**

United States District Court,
D. Nevada.

June 17, 1996.

---

Frank W. Thompson, Reno, Nevada, for plaintiff.

Scott M. Mahoney, Reno, Nevada, for defendant.

### MEMORANDUM DECISION AND ORDER

HAGEN, District Judge.

Before the court is plaintiff's bill of costs (# 67) and plaintiff's motion for nontaxable costs and attorney's fees (# 69).

Plaintiff asserts she is entitled to a full award of attorney's fees and nontaxable costs pursuant to 42 U.S.C. § 2000e–5(g)(2)(B). Defendant opposes (# 72). Forty-two U.S.C. § 2000e–5(g)(2)(B) provides,

> On a claim in which an individual proves a violation under section 2000e–2(m) [1] of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>
> (i) may grant ... attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m)[.]

The word "may" in this section indicates that the grant of attorney's fees and costs lies within the court's discretion [2].

In opposition, defendant argues that under the rationale of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), plaintiff may not recover one hundred percent of her costs and attorney's fees because she had only incomplete success. In *Hensley*, the Supreme Court held that "the extent of a plaintiff's success is a crucial factor in awarding attorney's fees under 42 U.S.C. § 1988." Defendant maintains that plaintiff's mixed motives verdict is akin to a plaintiff's verdict in a civil rights case wherein only nominal damages are awarded [3] because a mixed motives verdict, like a nominal damages award, "highlights the plaintiff's failure to prove actual, compensable injury." *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

Defendant further contends that *Sheppard* cannot be viewed as establishing a right to a one hundred percent award because the *Sheppard* plaintiff voluntarily reduced her demand by fifty percent [4], and therefore the court did not reach the question whether a downward adjustment in attorney's fees and costs is "appropriate generally" in mixed motive Title VII cases where the plaintiff is not entitled to damages. *Id.*, at 1380.

In *Sheppard*, the court, in a ruling not pertinent to this case, held that Rule 68 did not bar recovery of attorney's fees because the legislative history of 42 U.S.C. § 2000e–

---

1. Forty-two U.S.C. § 2000e–2(m), one of the amendments to Title VII included in the 1991 Civil Rights Act, legislatively overruled the Supreme Court's holding in *Price Waterhouse v. Hopkins* that in mixed motive cases, in which an employer relies in part on an impermissible motive in making an employment decision but proves that it would have made the same decision in the absence of the impermissible motive, there is no violation of Title VII. 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Section 2000e–2(m) provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

2. The restrictive "directly attributable" language does not apply to limit recovery of attorney's fees in a case such as this, where only one claim of discrimination (which ultimately is determined to be a mixed motive claim) is ever at issue in the lawsuit. *See Sheppard v. Riverview Nursing Cen-

*tre, Inc.*, 870 F.Supp. 1369, 1375 & n. 4 (D.Md. 1994).

3. In *Sheppard*, the defendant made this argument in support of its position that the court should deny fees altogether. The court rejected this argument, but left open the question whether, and to what degree, the fee award should be reduced.

4. The plaintiff in *Sheppard* did not reduce the number of hours claimed but rather, after she calculated the entire "lodestar" amount, reduced her fee request by fifty percent "in light of her failure to prove that she would not have been laid off in the absence of defendant's discrimination and her consequent failure to recover any damages at trial." The court disallowed a portion of the fees claimed, rendering plaintiff's (reduced) request fifty-eight percent of the original "lodestar" amount.

5(g)(2)(B) indicated that the "attorney's fees *and* costs" language reflected Congress' intent to bar attorney's fee shifting under Rule 68 in mixed motive cases. The court reasoned that Congress intended to ensure that Title VII plaintiffs would be able to hire competent counsel to pursue their claims. "Because no monetary damages are available where section 2000e–5(g)(2)(B) applies, if post-offer attorney's fees were also potentially cut off, few attorneys would be willing to handle mixed motive cases at all." *Id.*

This reasoning, while persuasive in the context in which it was used, does not compel the conclusion that a one hundred percent award is appropriate. The statutory language does no more than authorize an award of attorney's fees in the discretion of the court. It does not address the issue before the court in this case, i.e., the amount of attorney's fees reasonably recoverable where the prevailing plaintiff prevails only in the sense that a mixed motive has been established. However, the court shares the concern of the *Sheppard* court that the statute be interpreted to effectuate the policy objectives of Congress.

The issue appears to be one of first impression. Prior to the 1991 amendments, the *Price Waterhouse v. Hopkins* decision would have precluded any award of attorney's fees to a plaintiff who was able to prove a discriminatory motive was a substantial factor in the adverse employment decision but who was unable to prove that the same decision would not have occurred in the absence of the impermissible motive. 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The 1991 amendments to the Civil Rights Act of 1964 partially overruled *Price Waterhouse* by defining a plaintiff in such a posture as a prevailing party and allowing limited relief, including declaratory and injunctive relief and attorney's fees and costs, in the discretion of the court. 42 U.S.C. § 2000e–2(m); 42 U.S.C. § 2000e–5(g)(2)(B)(i). However, the statute provides no guidance as to the amount of fees reasonable in such a case.

In *Hensley v. Eckerhart,* the Supreme Court held that the extent of a plaintiff's success is a crucial factor in the court's determination of an attorney's fee award[5], and the court should only award an amount of fees reasonable in light of the results obtained. 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The Court rejected a rule requiring proportionality between the damages award and an attorney's fee award; however, the Court cautioned that the relief obtained should justify the expenditure of attorney time. *Id.,* at 455 n. 11, 103 S.Ct. at 1951 n. 11. The district court should provide a clear and concise explanation for the fee award; "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.,* at 437, 103 S.Ct. at 1941.

Ms. Snell, the prevailing party, has achieved only partial or limited success. The jury did find that defendant discriminated against plaintiff. Because the jury also concluded that the adverse employment actions would have occurred even absent the impermissible discrimination, as a matter of law plaintiff was not entitled to damages or back pay. Because this litigation only concerned the past actions of the defendant towards this plaintiff, and the plaintiff no longer works for the defendant, injunctive relief was not appropriate. Plaintiff's success is nothing more than the satisfaction of having her belief that she was the victim of illegal employment discrimination validated by the jury's verdict. Under *Hensley,* if the court were to consider only the "level of success" achieved by plaintiff, the fee award would be *de minimis.*

The court is concerned, however, that a strict application of the *Hensley* analysis would frustrate congressional intent in enacting 42 U.S.C. § 2000e–5(g)(2)(B). A Title VII plaintiff is the "chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S.

---

5. In *Hensley,* the plaintiff sought attorney's fees pursuant to 42 U.S.C. § 1988. However, the Court concluded that "[t]he standards set forth in [the *Hensley* ] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

412, 418, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978). Congress intended that plaintiffs who have established a mixed motive recover attorney's fees. If Congress intended merely a nominal recovery, it could have expressly provided for such.

The partial success determination is part of this court's inquiry into the reasonableness of the fee in a given case. *Gates v. Deukmejian,* 987 F.2d 1392 (9th Cir.1992). The Ninth Circuit has adopted a two-part analysis for meeting the *Hensley* requirements, but it is of little assistance in this situation. *Schwarz v. Secretary of Health and Human Services,* 73 F.3d 895, 901 (9th Cir.1995)[6].

In *Hannon v. Chater,* the district court was faced with a similar situation. 900 F.Supp. 1276 (N.D.Cal.1995). In that case, the plaintiff had sought damages and an injunction requiring the defendant agency to hire him as an Administrative Law Judge. The jury returned a mixed motives verdict, precluding the relief sought. The court characterized the plaintiff's achievement as "half a victory", and awarded half the lodestar amount (number of hours reasonably expended multiplied by a reasonable rate)[7].

Defendant contests plaintiff's right to a one hundred percent fee award, but fails to provide the court with a principled method by which to reduce the amount requested by plaintiff. In the absence of authority to the contrary, the court adopts the approach taken by the *Hannon* court, and finds that the fifty percent approach strikes an appropriate balance between the policy objectives embodied in 42 U.S.C. §§ 2000e–2(m) and 2000e–5(g)(2)(B) and the degree of success achieved by plaintiff in this litigation.

■ In calculating a reasonable attorney's fee for the prevailing party, the court should employ a "hybrid approach" in which it first calculates a lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, and then increases or reduces the presumptively reasonable lodestar amount, if appropriate, with reference to the *Kerr* factors (from *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975)), which have not been subsumed in the lodestar calculation. *Cunningham v. County of Los Angeles,* 879 F.2d 481, 484 (9th Cir.1988), *cert. denied,* 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990).

■ The lodestar amount in this case is $30,258.00 (168.1 hours claimed multiplied by an hourly rate of $180[8]). Many of the *Kerr* factors are deemed subsumed in the lodestar calculation. For example, the customary fee, the novelty and complexity of the issues[9],

---

**6.** "First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful claims and successful claims are related, then the courts must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

The first prong of this test is the same as the "directly attributable" requirement under the statute, discussed at n. 2 of this opinion. Here, plaintiff proceeded on a theory of pregnancy discrimination and the jury returned a mixed motives verdict. The plaintiff failed to prevail on her theory that pregnancy discrimination was the "but for" cause of the adverse employment treatment; however, clearly her success, the mixed motive verdict, was "related to" this theory. Therefore, no reduction is warranted for work done on unrelated unsuccessful claims. As previously discussed in this opinion, the significance of the overall relief obtained or "level of success" is difficult to quantify, but it clearly does not justify a $60,000.00 award.

**7.** The *Sheppard* plaintiff obtained a similar award, albeit through voluntary reduction of the amount of fees requested.

**8.** The normal billing rate of the attorney is presumptively the reasonable hourly rate. *See Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) and *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 174 (4th Cir.1994). Plaintiff's attorney submitted an affidavit establishing that $180.00 per hour is his normal hourly rate for civil rights litigation before this court. Defendant "questions" this rate for "correspondence, telephone calls, client conferences and other routine, perfunctory matters". However, defendant has produced no evidence that another rate is appropriate.

**9.** Plaintiff argues that the case involved the relatively new "poisoning the well" theory and that the difficulty of proving causation was enhanced by certain facts peculiar to this case. However, causation is always the key issue in employment discrimination cases. The court does not find these factors justify any upward adjustment in fees, especially in light of the fact that causation was not ultimately established.

the special skill, experience, and reputation of counsel, the quality of representation, and the results obtained, have all been accounted for in the hourly rate and the hours reasonably expended. There is no evidence that counsel was precluded from other employment due to acceptance of this case. Nor were there any unusual time limitations. Under *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the contingent nature of the fee agreement with the client no longer provides a basis for enhancing a fee award.

■ Defendant questions an April 9, 1993 bill for 1.5 hours to research jurisdictional requirements; a June 25, 1993 bill for 3.0 hours of legal research on jury trial and remedies; defendant also contests the "many hours [10]" billed for preparation of what were largely stock jury instructions between June 18, 1994 and October 5, 1995. However, defendant has not supported its objections with any evidence that these bills are unreasonable. Defendant has not, for example, supplied the court with any evidence of how many hours were billed by its counsel for comparable matters. In the absence of such evidence, any reductions in plaintiff's counsel's bill would be arbitrary in nature.

■ Plaintiff requests an upward adjustment in fees for delay in receipt of fees. The court finds that the delay in receipt of fees is more than accounted for by the use of plaintiff's counsel's current billing rate in the lodestar calculation; any additional upward adjustment is denied.

Because the court finds no basis in the parties' discussion of the *Kerr* factors to justify any further deviations from the lodestar amount, the court will award $30,258.00 in attorney's fees.

■ The court has considered the other arguments made by defendant in opposition to plaintiff's motion for attorney's fees, and finds them unpersuasive. For example, defendant argued that the court should consider the unreasonableness of plaintiff in refusing a nonnegotiable $40,000.00 settlement offer, made after a presumably negotiable $175,000.00 settlement demand by plaintiff. The court declines this invitation to construe presumptively inadmissible evidence of offers to compromise as grounds to penalize a plaintiff who exercised her right to a jury trial [11].

■ Plaintiff has advanced arguments which the court finds similarly irrelevant to a motion for attorney's fees. Plaintiff argues that she was prejudiced by juror confusion surrounding the meaning of Jury Instruction # 16. Plaintiff urges that the jury would have awarded back pay and front pay if the issue had been submitted to them, but they did not do so because Instruction # 16 instructed them that lost wage awards were the province of the court. Essentially, plaintiff asks the court to make up in attorney's fees what the jury did not award in compensatory damages. This the court declines to do. The jury's alleged belief that the court would award the plaintiff lost wages is irrelevant, both to the verdict [12] and to the matter of attorney's fees. Similarly, an attorney's fees motion is not the appropriate context in which to contest any alleged errors in the court's evidentiary or other rulings. The

---

10. An examination of the billing summary submitted by plaintiff reveals that in that time period, plaintiff's counsel billed 16.5 hours on preparing jury instructions or preparing opposition to defendant's jury instructions. However, at least eleven of those hours (February 2 and 3, 1995) were also devoted to preparing voir dire questions and a trial brief. Given the numerous continuances in this matter, some duplication of pretrial effort was unavoidable. The court cannot, on the evidence before it, conclude that these particular bills are unreasonable.

11. Ordinarily, a plaintiff risks the cost of her own attorney's fees in going to trial. Where attorney's fees awards are authorized by statute, both parties share the risk of plaintiff's attorney's fees.

The evidence submitted by defendant on the settlement process could just as easily be construed as evidence of defendant's unreasonableness; if defendant wished to avoid liability for plaintiff's attorney's fees, it could have settled the case.

12. Assuming, without deciding, that the instruction were confusing to the jury, the essential fact is that the jury found plaintiff would have suffered the adverse job action absent the discriminatory motive. This finding is the essence of a mixed motive verdict. There is no logical reason to assume the jury would have found differently if given the opportunity to award lost wages. Once that finding was made, as a matter of law, plaintiff could not be awarded lost wages or damages.

court's discretionary award of attorney's fees is not based on these factors.

*Bill of Costs*

▆▆▆ In objection (# 70) to plaintiff's bill of costs, defendant argues that plaintiff is not a prevailing party entitled to costs. The court has found that plaintiff is a prevailing party entitled to costs.

▆▆▆ Defendant also argues plaintiff is not entitled to tax as costs any amount in excess of the $40.00 statutory witness fee for the deposition of defendant's expert witness Dr. Lieberstein. The court agrees. Therefore, $260.00 will be subtracted from plaintiff's bill of costs.

*Nontaxable Costs Claimed by Plaintiff as a Prevailing Party*

Forty-two U.S.C. § 2000e–5(g)(2)(B)(i) allows for an award of costs. Defendant objects to $3,525.00 in expert and consultant fees. However, the 1991 amendments to the Civil Rights Act provide for the shifting of expert witness fees. *See* 42 U.S.C. § 2000e–5(k) (the court may allow attorney's fees (including expert fees) as part of the costs).

▆▆▆ Unlike the taxable costs allowed by L.R. 205–1(a), an award of attorney's fees and expert fees under 42 U.S.C. §§ 2000e–5(k) and 2000e–5(g)(2)(B)(i) are discretionary. Because plaintiff achieved only a mixed motive verdict and was therefore not entitled to any damages, back pay or front pay, the court finds it inappropriate to tax to defendant fees for experts who testified on these issues. Therefore, neither the $260.00 subtracted from plaintiff's bill of costs (above) nor the additional $3525.00 in expert witness fees will be awarded as nontaxable costs.

▆▆▆ In addition to the expert witness fees, plaintiff requests an award encompassing the following nontaxable costs incurred in this litigation: (1) facsimile charges: $205.50; (2) long distance phone charges: $62.82; (3) photocopying: $686.60; (4) LEXIS: $410.25; (5) paralegal expenses: $390.00; (6) nontaxable deposition charges: $287.50.

Although F.R.C.P. 54(d)(2)(A) contemplates court award of nontaxable expenses, separate statutory authority is required. Statutory authority to award reasonable attorney's fees includes the authority to award reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services. *Northcross v. Board of Education,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), and *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). Reasonable photocopying, paralegal, telephone, facsimile, LEXIS, and other charges normally charged to a fee-paying client are thus recoverable in the discretion of the court. *See id.* Therefore, these costs claimed by plaintiff will be awarded in the amount of $2,042.67.

**IT IS ORDERED** that $260.00 be subtracted from plaintiff's bill of costs (# 67).

**IT IS FURTHER ORDERED** that the clerk shall amend the judgment in this case in accordance with the following:

Plaintiff shall be awarded $30,258.00 in attorney's fees.

Plaintiff shall be awarded $2,042.67 in nontaxable costs as expenses.

**IT IS FURTHER ORDERED** that insofar as plaintiff's motion claims an amount greater than $32,300.67, the motion is, in the exercise of the court's discretion, *DENIED.*

**IT IS SO ORDERED.**