Darrell C. GRIFFETH, Plaintiff,

v.

SHEET METAL WORKERS' LOCAL UNIONS AND COUNCILS PENSION PLAN, et al., Defendants.

No. Civ. 96–595–PHX–RCB.

United States District Court,
D. Arizona.

Sept. 18, 1998.

Scott Goering, Goering Roberts Berkman Rubin & Brogna, P.C., Tucson, Arizona, Jack C. Levine, Phoenix, Arizona, for plaintiff.

Marc R. Lieberman, Lieberman Dodge Sendrow & Gerding, Ltd., Phoenix, Arizona, for defendants.

## ORDER

BROOMFIELD, Chief Judge.

Pending before the court is Defendant Sheet Metal Workers' Local Unions and Councils Pension Plan's ("LU & C Plan's") motion for attorney's fees and costs. The court now rules.

## I. BACKGROUND

During his employment with the Sheet Metal Workers' International Association (the "Union"), Plaintiff Darrell Griffeth ("Griffeth") was a participant in the LU & C Plan. Under the Plan, a participant is eligible for a disability pension if he becomes "totally disabled" while "actively employed as a Covered Person." The Plan defines "total disability" as an inability to engage in or secure any employment or gainful pursuit.

Griffeth was a "covered person" under the Plan until January 17, 1992, when he resigned. On June 7, 1993, Griffeth applied for disability benefits under the LU & C Plan, citing a disabling heart condition with an onset date of January 17, 1992. In his application, he indicated that, after his resignation, he continued to work as a "consultant" for the Union until October 15, 1992.

Griffeth subsequently applied for social security disability benefits. His social security application indicated that he became unable to work beginning October 15, 1992 and that he continued to work from February 1992 to October 1992. As part of his application, Griffeth also submitted a statement by his treating cardiologist, Russell S. Ruzich, M.D. Dr. Ruzich stated that Griffeth's disability began on October 10, 1992.

On December 5, 1994, the administrators of the Plan denied Griffeth's application, reasoning that Griffeth did not become "totally disabled" while he was actively employed as a "covered person" since he continued to work after January 17, 1992. Griffeth thereafter filed a complaint before this court, alleging that the decision of the LU & C Plan administrator violated the Employment Retirement Income Security Act ("ERISA").

The court granted the Plan's motion for summary judgment. The court found that it could review the Plan administrator's decision only for an abuse of discretion because the Plan granted the administrator discretionary authority to determine eligibility and to interpret plan terms. Under this standard, the court found that the administrator did not abuse his discretion because there existed overwhelming and compelling evidence (e.g., Griffeth and Dr. Ruzich's statements) which supported the administrator's conclusion that Griffeth was not "totally dis-abled while actively employed as a covered person." The court also rejected Griffeth's attempt to introduce an affidavit by Dr. Ruzich which affidavit was not part of the evidence submitted to the administrator. In doing so, the court reasoned that, under an abuse of discretion standard, it could only review evidence presented to or considered by the administrator.

## II. DISCUSSION

### A. IS THE PLAN ENTITLED TO ATTORNEY'S FEES?

The LU & C Plan seeks attorney's fees pursuant to 29 U.S.C. § 1132(g). That statute provides:

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g). Under the statute, the decision to award attorney's fees is committed to the discretion of the trial court. In exercising its discretion, the court is guided by five factors:

> (1) the degree of the opposing parties' culpability or bad faith;
>
> (2) the ability of the opposing parties to satisfy an award of fees;
>
> (3) whether an award of fees would deter others from acting under similar circumstances;
>
> (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
>
> (5) the relative merits of the parties' positions.

*See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.1980). No single factor is decisive, and some factors may not be pertinent in a given case. *Carpenters Southern California Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984).

### 1. Bad faith or culpability

The Ninth Circuit has not clearly defined the meaning of "bad faith" or "culpability." The Plan argues—and Griffeth does

not dispute—that the bringing of a "frivolous" claim constitutes "bad faith" or "culpability." Because the parties do not dispute this definition of "bad faith," the court assumes without deciding that the assertion of a frivolous claim would meet the first *Hummell* factor. Further, the court agrees with the Plan that Griffeth's claim was frivolous because an abuse of discretion standard of review clearly applied in this case and because there existed overwhelming and compelling evidence within the administrative record to support the Plan administrator's decision to deny benefits to Griffeth, thus demonstrating that the administrator did not abuse his discretion. *See* 9/11/97 Order at 6–8.

■ Griffeth argues that his claim is not frivolous because evidence outside the administrative record demonstrated that he was "totally disabled while actively employed as a covered person." The court disagrees for two reasons. First, under an abuse of discretion standard, the court can only review evidence presented to or considered by the plan administrator. *See* 9/11/97 Order at 9–10. Griffeth's reliance on evidence outside the administrative record to support his claim—when such evidence clearly could not be considered by the court—renders his claim frivolous. Second, even if the court could have considered evidence outside the administrative record, the evidence Griffeth offered was contradicted by other evidence in the administrative record and the administrator's decision to rely on the other evidence was clearly not an abuse of discretion. *See* 9/11/97 Order at 10–11.

■ The first factor, therefore, weighs in favor of awarding attorney's fees.[1]

2. Ability to satisfy award

The Plan contends that Griffeth has the ability to satisfy an attorney's fee award of $27,329.39 because he receives $1,213 in social security disability benefits per month, $683.50 in National Pension Fund ("NPF") disability benefits per month, and approximately $20,610 in retroactive disability payments from the NPF Plan. Griffeth does not dispute that he receives the above-listed benefits but he alleges that he paid his attorney one-third of the $20,610 in retroactive payments (or approximately $6870). Griffeth, however, has not presented any evidence to demonstrate that these benefits are his sole source of income and that his living expenses equal or exceed these benefits. Absent such evidence, the court cannot determine whether this factor weighs in favor of or against the granting of attorney's fees.

3. Deterrence

An award of attorney's fees against Griffeth would deter other participants from bringing similarly frivolous claims.

4. Benefit to other participants and beneficiaries or resolution of significant legal question regarding ERISA

Griffeth's claim did not seek to benefit other plan participants or beneficiaries nor did it resolve a significant legal question in ERISA.

5. Relative merits of the parties' positions

As indicated above, Griffeth's claim was frivolous. This factor, therefore, weighs in favor of granting attorney's fees to the Plan.

■ On balance, the *Hummell* factors favor a grant of attorney's fees. Griffeth's argument that the court should not award attorney's fees pursuant to *Poole v. Seattle–First Nat'l Bank,* 741 F.Supp. 837 (E.D.Wash.1990), is unpersuasive. As the Plan notes, *Poole* is inapposite because the opposing party's arguments therein had substantial merit—in contrast to Griffeth's arguments here—and because the opposing party alleged a conflict of interest by the plan fiduciary and the *Poole* court did not want to discourage such claims—in contrast to Griffeth's claim here which does not allege a conflict of interest. *See id.* at 848.

Also, Griffeth's claim that the Ninth Circuit is reluctant to award attorney's fees against disabled retirees is not supported by his citation to *Arnold v. Arrow Transp. Co.*

---

1. But, even if Griffeth did not file his claim in "bad faith," bad faith is not a prerequisite to a grant of attorney's fees under § 1132(g). *Eddy v.*

*Colonial Life Ins. Co. Of America,* 844 F.Supp. 790, 793 (D.D.C.1994).

*of Delaware,* 926 F.2d 782, 787 (9th Cir.1991). The Ninth Circuit in *Arrow* did not broadly state a reluctance to award attorney's fees against disabled retirees; rather, it considered the opposing party's retired status as evidence of his inability to pay the attorney's fees award and as one of several *Hummell* factors to consider (as opposed to a dispositive factor, as Griffeth suggests). Also, as the Plan notes, the Ninth Circuit has expressly indicated that it does not categorically favor or disfavor awards against certain groups of litigants. In *Estate of Shockley v. Alyeska Pipeline Serv. Co.,* 130 F.3d 403 (9th Cir.1997), the Circuit rejected the district court's assumption that it disfavored awards of attorney's fees against ERISA plaintiffs who seek pension benefits. It wrote: "We first disabuse the district court of the suggestion that we favor one side or the other in ERISA fee cases. The statute is clear on its face—the playing field is level." *Id.* at 408.

### B. TO HOW MUCH ATTORNEY'S FEES IS THE PLAN ENTITLED? [2]

■■ In determining the amount of fee award to which the Plan is entitled, the court considers the factors set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975). *Russell,* 726 F.2d at 1415 n. 9. Those factors are:

> (1) the novelty and difficulty of the questions involved;
>
> (2) the skill requisite to perform the legal service properly;
>
> (3) the preclusion of other employment by the attorney due to acceptance of the case;
>
> (4) the customary fee;
>
> (5) the time limitations imposed by the client or the circumstances;

> (6) the amount involved and the results obtained;
>
> (7) the experience, reputation, and ability of the attorneys;
>
> (8) the nature and length of the professional relationship with the client;
>
> (9) the time and labor required;
>
> (10) similar awards in similar cases.[3]

*See id.*

#### 1. Novelty and difficulty of questions

The Plan's counsel, Marc Lieberman, concedes that the questions addressed in this case were neither novel nor difficult.

#### 2. Requisite skill

Because the case did not involve novel or difficult questions, the skill required to litigate the case was not beyond the ordinary.

#### 3. Preclusion of other employment

Acceptance of this case did not preclude the Plan's counsel from working on other matters.

#### 4. Customary fee

Mr. Lieberman charged the Plan an hourly rate of $145, and he attests that this rate is at the low end of the median rate charged by law firm partners in Arizona. He cites in support to a survey conducted by the State Bar of Arizona and printed in Arizona Attorney Magazine, which survey indicates that $140 is the lowest median rate and $195 is the highest median rate charged by partners in Arizona.[4]

---

**2.** Griffeth argues that the court should defer ruling on the reasonableness of the attorney's fees requested by the Plan until he can hire a separate attorney to file a separate response. The court fails to see why Griffeth's present attorney was not qualified to address the reasonableness of the Plan's requested attorney's fees and why he could not have incorporated such arguments in his previously filed response.

**3.** *Kerr* listed two other factors—whether the fee was fixed or contingent and the undesirability of the case. The Supreme Court has cast doubt on the relevance of these two factors in determining

whether the amount of attorney's fees requested is reasonable. *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). *See also Davis v. City and County of San Francisco,* 976 F.2d 1536, 1546 n. 4 (9th Cir. 1992).

**4.** For work performed by a paralegal and a law clerk, Mr. Lieberman billed the Plan at an hourly rate of $55. While Mr. Lieberman did not present evidence to indicate that such a rate was reasonable in Arizona, the court takes judicial notice that such an hourly rate is reasonable.

**5. Time limitations**

No unusual time limitations were imposed by the Plan or by the circumstances.

**6. Amount involved and results obtained**

The Plan incurred fees and costs in excess of $27,329.39 to defend a claim which, according to the Plan, would have entitled Griffeth to $796 per month, accruing from June 6, 1993 to Griffeth's death. To date, the accrued value of such benefits would total $54,924.

**7. Experience, reputation and ability**

Mr. Lieberman attests that he has served as a general counsel to three of Arizona's four largest public pension plans and that he has significant experience in ERISA issues such as those involved in the case.

**8. Nature and length of relationship with client**

Mr. Lieberman has not served as the Plan's counsel prior to this case. In litigating the case, Mr. Lieberman reported to the Plan's senior in-house attorney who ultimately directed the course of the Plan's case.

**9. Time and labor required**

Pursuant to Local Rule 2.20, the LU & C Plan has submitted an itemized task-based statement which details the time spent on the case. The statement indicates that 2.75 hours were spent to:

Review Fund correspondence re why Griffith was switched from Plan B to Plan A(1.6); extended letter to opposing counsel re same and why switch was proper (.9); letter to Marsha Gochnauer re her review of same (.25).

The court will deduct these hours because it was not time incurred in defense of Griffeth's claim against the *LU & C Plan*. Rather, it appears to be time incurred in defense of Griffeth's claim against the *NPF Plan*, which claim Griffeth and the NPF Plan had settled.

The statement includes an entry of 1.8 hours for research and drafting of a motion for Rule 54(b) certification. Since this court ultimately ruled against the Plan on this motion, the court will also deduct this time entry.

The statement indicates that Mr. Lieberman spent approximately 33 hours in researching and drafting the memorandum of points and authorities in support of the Plan's motion for summary judgment and approximately 24.56 hours in researching and drafting the reply in support of the Plan's motion for summary judgment; these hours do not include the additional 25.56 hours Mr. Lieberman spent in drafting a stipulated statement of facts. The court finds that, in light of the simplicity of legal issues in this case and in light of Mr. Lieberman's attested experience in ERISA-related cases, these hours are excessive. Accordingly, the court will reduce them by 25%.

Finally, the statement includes a series of telephone conferences and letter(s) to persons whose relationship to this case are unclear (e.g., Chacon, Rutledge, D'elia). The entries total 1.703 hours. The court will deduct these hours from the requested attorney's fees.

**10. Awards in similar cases**

The Plan cites to three cases where courts have awarded attorney's fees at higher hourly rates or at greater amounts than that sought by the Plan here. *See Lutheran Med. Ctr. of Omaha, Nebraska v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan,* 25 F.3d 616, 623–24 (8th Cir.1994) (affirming attorney's fee award of $49,299.69); *Mendez v. Teachers Ins. and Annuity Ass'n & College Retirement Equities Fund,* 982 F.2d 783, 789 (2d Cir.1992) (affirming attorney's fee award of $20,190 (77 hours × $260 hourly rate)); *Egert v. Connecticut Gen. Life Ins. Co.,* 768 F.Supp. 216, 218–21 (N.D.Ill.1991) (awarding attorney's fees in excess of $150,000). The court does not agree with the Plan that these cases are "similar" to this case. They involved more complex legal questions, a lengthier litigation, and/or a higher prevailing hourly rate in the relevant district.

Notwithstanding, after considering the *Kerr* factors, the court concludes that the amount of fees requested by Mr. Lieberman, subtracting those fees which the court has found excessive, is reasonable.

In addition to attorney's fees, Mr. Lieberman has also requested computerized research expenses totaling $1,071.04. "The statutory authority to award a 'reasonable attorney's fee' includes the authority to award reasonable out-of-pocket expenses incurred by the attorney that are normally charged to the client in the course of providing legal services." *Snell v. Reno Hilton Resort,* 930 F.Supp. 1428, 1434 (D.Nev.1996) (citation omitted); *Metro Data Sys., Inc. v. Durango Sys., Inc.,* 597 F.Supp. 244, 247 (D.Ariz.1984) (citation omitted). Courts within this Circuit have found computerized research expenses to constitute "reasonable out-of-pocket expenses normally charged to the client." *See, e.g., Aloha Tower Assocs. Piers 7, 8, and 9 v. Millennium Aloha,* 938 F.Supp. 646, 650 (D.Hawai'i 1996); *Snell,* 930 F.Supp. at 1434. The Seventh Circuit has provided the following rationale for awarding reasonable computerized research expenses:

> If computerized research expense were customarily [considered part of firm overhead], lawyers' hourly rates would be even higher than they are, requiring an adjustment in the lodestar. But the more important point is that the market—the paying, arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than requiring these items be folded into overhead. Markets know market values better than judges do. And as with paralegals, so with computerized research: if reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for that of the paralegal or computer.

*In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 570 (7th Cir.1992). The court finds this reasoning persuasive and concludes that reasonable WESTLAW charges may be awarded as part of "reasonable attorney's fees." However, the court notes that some of the requested WESTLAW charges have a different client number (1731003) than the client number identified elsewhere for the LU & C plan (1731005). The court is concerned that the charges associated with the number 1731003 may have been related to Mr. Lieberman's defense of the NPF Plan rather than his defense of the LU & C plan.

Accordingly, it will only award WESTLAW charges associated with 1731005 or $571.01.

IT IS THEREFORE ORDERED granting in part and denying in part LU & C Plan's motion for attorney's fees. Griffeth is directed to pay Defendant attorney's fees in the amount of $19,663.46.