Michaela A. GUDENKAUF, Plaintiff,

v.

STAUFFER COMMUNICATIONS, INC., a Delaware corporation, d/b/a Stauffer Magazine Group, Defendant.

No. 94–4228–SAC.

United States District Court, D. Kansas.

Jan. 30, 1997.

Amy C. Bixler, Alan G. Warner, Margaret A. Graham, Warner, Bixler & Associates, L.L.C., Topeka, KS, for Plaintiff.

Michael W. Merriam, Gehrt & Roberts, Chartered, Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on the plaintiff's motion for costs and attorney fees (Dk. 93); the plaintiff's statement of consultation for costs and attorney's fees (Dk. 104); the defendant Stauffer Communications, Inc.'s ("Stauffer's") objection to the plaintiff's statement for costs and fees (Dk. 107); and the plaintiff's reply (Dk. 108).

### BACKGROUND

The plaintiff brought this employment discrimination action alleging the employer, Stauffer Communications, Inc. ("Stauffer") terminated her employment on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(A)(1), *et seq.;* on the basis of her pregnancy in violation of the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k), *et seq.;* and on the basis of her disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* The plaintiff also claimed that Stauffer denied her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* The plaintiff also sued Stauffer and Christy Skinner for intentional infliction of emotional distress.

In its order filed February 8, 1996, the court dismissed the plaintiff's claim against both Stauffer and Christy Skinner for intentional infliction of emotional distress. (Dk. 63). In its order filed February 13, 1996, *Gudenkauf v. Stauffer Communications, Inc.,* 922 F.Supp. 465 (D.Kan.1996), the court granted Stauffer's motion for summary judgment on the plaintiff's claims under the ADA and the FMLA and denied the motion on the PDA claim. (Dk. 64). The jury trial on the remaining PDA claim commenced June 24, 1996. After approximately three days of evidence and six hours of deliberations, the jury returned its verdict finding that the plaintiff's pregnancy was a motivating factor in the defendant's decision to terminate her but that the defendant would have still terminated her in the absence of the discriminatory motive. (Dks. 88, 91). The court entered judgment consistent with the verdict on July 1, 1996. (Dk. 92).

The defendant Stauffer filed a motion for judgment as a matter of law (Dk. 94) and a motion to determine liability for statutory attorneys' fees pursuant to Fed.R.Civ.P. 54(d)(2)(C) (Dk. 97). In *Gudenkauf v. Stauf-*

*fer Communications, Inc.,* 936 F.Supp. 805 (D.Kan.1996), the court denied the defendant's motion for judgment as a matter of law and granted the defendant's latter motion to the extent of finding that the plaintiff was entitled to recover attorneys' fees in an amount to be determined later. (Dk. 103). The court also took the plaintiff's motion for costs and fees under advisement pending the parties' compliance with D.Kan.Rule 54.2 and their full briefing of all matters relevant to a fee award. 936 F.Supp. at 809. The parties have completed this process, and the issues are now ripe for ruling.

## DISCUSSION

 Prior to the 1991 Civil Rights Act, the Supreme Court's decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), would have barred the recovery of attorneys' fees here. After the Act, a plaintiff is now eligible for attorneys' fees under the following circumstances:

> On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>
> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and
>
> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e–5(g)(2)(B). There are two relevant differences between this statute and the attorney's fees provisions in other civil rights statutes. First, § 2000e–5(g)(2)(B) does not use or even refer to the term, "prevailing party," found in 42 U.S.C. § 2000e–5(k) or 42 U.S.C. § 1988(b). Second, instead saying that a court "may allow ... a reasonable attorney's fee", § 2000e–5(k) and U.S.C. § 1988(b), the statute controlling here, § 2000e–5(g)(2)(B), says a court "may grant ... attorney's fees ... demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m)." The court discussed the first difference in its prior order and will not revisit this discussion now. As for the second difference, the court cannot help but think that the absence of the adjective, "reasonable," in § 2000e–5(g)(2)(B) was an oversight and that the limiting language of "directly attributable only" will be significant in many discrimination cases.[1]

---

1. The court agrees with the majority in *Sheppard v. Riverview Nursing Center, Inc.,* 88 F.3d 1332, 1338 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996), that Congress did not intend to place "mixed-motive plaintiffs in a more favorable position than plaintiffs for whom discrimination is the sole cause of an adverse employment decision." Consequently, the court believes any award of attorneys' fees to a mixed-motive plaintiff is subject to the same or similar reasonableness standards governing fee awards to other discrimination plaintiffs. In tailoring an award of fees, the court's inquiry into a mixed-motive plaintiff's degree of success is not, however, the traditional proportionality inquiry used when a plaintiff is awarded some damages. The statute does not preclude a mixed-motive plaintiff from recovering fees, but it does preserve a court's discretion to factor in the degree of a plaintiff's success. Congress chose a mixed-motive plaintiff as an instrument to vindicate important policy of discrimination in the work place. Plainly, Congress saw an attorney's fees award in a mixed-motive case as a deterrent to discrimination. *See Snell v. Reno Hilton Resort,* 930 F.Supp. 1428, 1431–32 (D.Nev.1996). Consequently, the proportionality inquiry in a mixed-

motive case expands to consider whether the verdict serves public purposes, as in cases which "evidence a widespread or intolerable animus" by the employer as opposed to cases which "illustrate primarily the plaintiff's unacceptable conduct." 88 F.3d at 1336. In other words, the court must assess how successful the plaintiff was in proving "that an employer's discrimination, and not the employee's own misconduct, drove the employment decision." 88 F.3d at 1339. This inquiry should also encompass the extent to which the mixed-motive verdict may have served one or more of the plaintiff's legitimate purposes for filing the suit and pursuing the litigation through trial. As mentioned in the court's prior order, "[t]he record indicates the plaintiff brought the suit in part to vindicate her belief that she had been unfairly treated because of her pregnancy, to prove to Stauffer's management that pregnancy discrimination had occurred, and to erase or[, at least,] to minimize a negative mark appearing early in her employment history." *Gudenkauf v. Stauffer Communications, Inc.,* 936 F.Supp. 805, 809 (D.Kan.1996). Finally, any reduction based on degree of success should be tempered by the consideration that the award is strictly limited to fees "demonstrated to

" '[A] reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.' " *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5913). "[A]ttorney fee 'awards made under the authority of federal fee-shifting statutes come under close scrutiny.' " *Mann v. Reynolds,* 46 F.3d 1055, 1062 (10th Cir.1995) (quoting *Joseph A. v. New Mexico Dept. of Human Servs.,* 28 F.3d 1056, 1060 (10th Cir.1994)). This conclusion stems from the following observation:

> [T]hese statutes "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws."

*Mann,* 46 F.3d at 1063 (quoting *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.,* 834 F.2d 1533, 1548 (10th Cir.1987) (quoting in turn *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098–99, 92 L.Ed.2d 439 (1986))).

In determining a reasonable attorney's fee, the district court first calculates the "lodestar" figure, that is, the product of multiplying reasonable hours by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). This "lodestar amount" is "the centerpiece of attorney's fee awards." *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989). The lodestar figure "is the presumptively reasonable fee." *Metz v. Merrill Lynch, Pierce,*

*Fenner & Smith,* 39 F.3d 1482, 1493 (10th Cir.1994). The lodestar amount is then adjusted upwardly or downwardly to reflect other factors, such as those listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[2] *Id.*

Rather than round two of the litigation, an attorney's fee request is an issue on which settlement should be quite possible. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. If no settlement is reached, the party requesting fees carries the burden of establishing the reasonableness of the fee application, *Smith v. Freeman,* 921 F.2d 1120, 1122 (10th Cir. 1990), and of "documenting the appropriate hours expended and hourly rates," *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. The Tenth Circuit has required that " 'lawyers keep meticulous time records that "reveal ... all hours for which compensation is requested and how those hours were allotted to specific tasks." ' " *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 989 (10th Cir.1996) (quoting *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir.1995) (quoting *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983))). "The applicant should exercise 'billing judgment' with respect to hours worked, ..., and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437.

### A. Requested Hourly Rates

"The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad,* 815 F.2d 1384, 1385 (10th Cir.1987) (citation omitted). A court is to look "to the prevailing market rates in the relevant community" in calculating a reasonable fee. *Blum,* 465 U.S. at 895, 104 S.Ct. at 1547. The relevant community is the area in which the litigation occurs. *Ramos v. Lamm,* 713 F.2d 546, 555 (10th

---

be directly attributable only to the pursuit of" the discrimination claim.

**2.** The lodestar calculation typically subsumes many of the *Johnson* factors, *Hensley v. Eckerhart,* 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983), and carries a

"strong presumption" that it represents a reasonable fee, *Blanchard v. Bergeron,* 489 U.S. 87, 95, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) (quoting *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)).

Cir.1983). The burden is with the applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. Though a lawyer's customary billing rate is relevant, it is not conclusive. *Ramos*, 713 F.2d at 555; *see McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir.1988) (billing rates typically are in line with market rates). The court should factor in the quality of an attorney's performance in deciding on a reasonable rate. *Id.*

The plaintiff has not submitted evidence of the prevailing rates charged by plaintiff employment discrimination attorneys in Topeka with the skill, experience and reputation comparable to their counsel. The affidavits from two of her own attorneys, Alan Warner and Amy Bixler, do not even demonstrate that they customarily charge the hourly rates requested here. Mr. Warner avers that the "hourly rate of $135.00 is the most recent rate for lead counsel established in this District" and that he has "charged as much as $200.00 an hour in civil rights cases" in the District of Columbia. While Mr. Warner does not cite any decision from the District of Kansas in his affidavit, the plaintiff's memorandum refers to the Kansas City case of *Eichenwald v. Krigel's Inc.*, 1996 WL 157223 1996 U.S.Dist. LEXIS 4241 (D.Kan.1996). The plaintiff does not demonstrate that hourly rates charged in the Kansas City area are necessarily comparable to what are charged in Topeka. For that matter, there is no reason to believe that Mr. Warner's hourly rate in the District of Columbia has any relevance in determining an appropriate hourly rate in Kansas.

■ The defendant objects to the plaintiff's requested fee rates and suggests rates of $110.00 for Mr. Warner and Ms. Bixler and $80.00 and $35.00 for Ms. Graham. Based on the experience, skill, reputation and performance of the plaintiff's attorneys, the court believes the reasonable hourly rates would be $125.00 for Alan Warner, $115.00 for Amy Bixler, and $90.00 after admission to the bar and $50.00 before ad-

mission for Margaret Meiering Graham. *See T.Y. by Petty v. Board of County Commissioners Shawnee County*, 912 F.Supp. 1416, 1423 (D.Kan.1995); *Brown v. Unified School Dist. No. 501, Shawnee County, Kan.*, 878 F.Supp. 1430, 1436 (D.Kan.1995); *Phelps v. Hamilton*, 845 F.Supp. 1465, 1470 (D.Kan. 1994), *judgement rev'd*, 76 F.3d 393 (10th Cir.1996).

### B. Requested Hours

A court is to devote careful attention to whether the number of billed hours were reasonably expended. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir.1986). Hours are not reasonably expended, though actually expended, if they are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. at 434, 109 S.Ct. at 1939–40. Unreasonable hours can occur when the attorneys lack skill or experience, overstaff the case, or fail to exercise billing judgment. *Id.* The defendant contends the hours billed by the plaintiff's counsel have not been "demonstrated to be directly attributable only to" the Title VII claim. The defendant further argues that the plaintiff's counsel did not exercise billing judgment and billed for duplicative services "by unnecessarily doubling or tripling the lawyers involved." (Dk. 107 at 21).

The plaintiff ignores the "directly attributable" language in § 2000e–5(g)(2)(B)(i) and argues that all of the attorneys' reported hours are compensable as her claims were simply different legal theories of relief based on a single, core factual situation. In the context of other attorney's fees provisions, the Supreme Court has said:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Unlike the other attorney's fees statutes, § 2000e–5(g)(2)(B)(i) definitively requires a

mixed-motive plaintiff to demonstrate the fees "directly attributable only to the pursuit of a claim under § 2000e–2(m)."[3] It necessarily follows that Congress did not intend for a mixed-motive plaintiff to recover fees for work done on other claims. On the other hand, "it is unfair to require that a plaintiff's attorney make fine distinctions in the pleadings" and billing records between a pretext case or a mixed-motive case. *Hannon v. Chater,* 900 F.Supp. 1276, 1283 (N.D.Cal. 1995). Fees are directly attributable to the mixed-motive claim if they cannot be reasonably disentangled from the work done on other discrimination claims which share a common core of facts. *Id.* at 1284. Therefore, the plaintiff may recover only those fees that directly result from the prosecution of her pregnancy discrimination claim.

The court has no difficulty identifying and estimating certain billed hours as simply not attributable to the prosecution of the plaintiff's mixed-motive pregnancy discrimination claim. This includes the hours spent reviewing, researching and responding to the defendant Skinner's two motions to dismiss (Dks. 6 and 39) and the rulings thereon; the hours spent in researching, requesting and drafting the amended complaints; and a portion of the hours spent reviewing, researching and opposing the defendant's motion for summary judgment. On this basis, the court reduces the requested hours by approximately 135 hours for Mr. Warner and 47 hours for Ms. Bixler.

"[N]ot all hours expended in litigation are normally billed to a client, ... an applicant should exercise 'billing judgment' with respect to a claim of the number of hours worked." *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir.1996) (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941). The applicant should exclude hours that are " 'excessive, redundant, or otherwise unnecessary.' " *Id.* Corresponding to the applicant's duty is the court's obligation to exclude hours not

"reasonably expended." *Id.* Exact rules or formulas do not guide a court in determining what hours are reasonably expended. The discretion is with the district court to do what is equitable after making the relevant considerations. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

"The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award...." *Id.* at 436–37, 103 S.Ct. at 1941. The district court is not required to "identify and justify each disallowed hour" or to "announce what hours are permitted for each legal task."[4] *Mares v. Credit Bureau of Raton,* 801 F.2d at 1202; *see Malloy,* 73 F.3d at 1018. General reductions are permitted so long as the district court provides a concise explanation of its reasons. *Id.* at 1203.

The burden rests with the fee applicant to show that the claimed hours are reasonable. *Blum,* 465 U.S. at 897, 104 S.Ct. at 1548. Attorneys "must keep meticulous, contemporaneous time records." *Ramos,* 713 F.2d at 553. "These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks— for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." *Id.* (footnote omitted). The records should be detailed enough for the court to separate out time spent on claims on which the party did not prevail, to identify hours that are unnecessary or excessive, and to determine if billing judgment was exercised. *See Hensley,* 461 U.S. at 434, 437, 103 S.Ct. at 1939–40, 1941.

For the most part, the plaintiff's attorneys' billing records are adequate. There are several instances where more description than "Research opposition" would assist the court in deciding reasonableness. The court will not reduce any of the claimed hours for an inadequate billing statement.

**3.** Section 2000e–2(m) provides:

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any

employment practice, even though other factors also motivated the practice.

**4.** "Such a rule would lead to disagreement of the most odious sort between court and counsel." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1202 (10th Cir.1986).

A court is to act like a senior partner in a private law firm and deduct from a fee application those hours that would not be billed to the client. *Ramos,* 713 F.2d at 555, 557.[5] This entails considering if the total hours billed by each lawyer are in line with what average lawyers are able to bill in a week and year, if particular tasks are properly billed to the client or absorbed as firm overhead, and if the hours billed for a specific task are reasonable [6] for the case and circumstances. *Ramos,* 713 F.2d at 554. When the number of hours requested for the entire case or for a particular task significantly exceeds the norm and cannot be explained by a justifiable circumstance, the court should reduce those hours to what is reasonable. *Id.*

In determining the reasonableness of the requested hours, the court also must scrutinize billing records for potential duplication of services when there is more than one attorney on the case. *Id.* The court should not allow more than one attorney to bill for performing a single task unless warranted by the complexity of that task. Indeed, courts " 'should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.' " *Pearson v. Fair,* 980 F.2d 37, 47 (1st Cir. 1992) (quoting *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992)). The court should pay close attention to the number of attorneys billing for each hearing or proceeding, the role being assumed by each attorney, and the number of attorneys appearing for the other side. *Ramos,* 713 F.2d at 554. " 'For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.' "

*Id.* (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980)). "[T]he presence of more than two lawyers during trial or the presence of more than one lawyer at depositions and hearings must be justified to the court." *Ramos,* 713 F.2d at 554 n. 4.

■ The defendant argues a substantial number of the requested hours are subject to reduction for duplication of services. The plaintiff denies there is any duplication as her counsel offers a "legal-service package" in which all three counsel are familiar with the case and each contributes his or her own distinctive services. The court cannot tell from the billing statement that each of the three lawyers made a distinct and unique contribution to the case and that each is billing only for that particular contribution. From its own docket of typical single-plaintiff employment discrimination cases, the court sees no custom, pattern or trend towards multiple-lawyer litigation. Of course, some single-plaintiff employment discrimination cases do require more than one attorney due to the complexity or breadth of the facts and theories. The plaintiff does not argue that her case was so complex or involved as to require more than one attorney. The relative brevity and simplicity of the trial would belie any effort to characterize this case as complex. Considering the hours that the plaintiff's counsel have billed for the different tasks and trial, the court is convinced that there has been duplication of services. The plaintiff's billing records are replete with examples of duplication.[7]

Hours spent reading background cases or familiarizing oneself with the general area of law should be absorbed in the firm's overhead and not be billed to the client. *Ramos,*

5. "Lawyers charging fees to adversaries rather than clients may be less likely to carefully scrutinize the hours spent to determine if payment for the task performed is justified." *Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir.1983).

6. The Tenth Circuit specifically encourages:

In determining what is a reasonable time in which to perform a given task or to prosecute the litigation as a whole, the court should consider that what is reasonable in a particular case can depend upon factors such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side.
*Ramos v. Lamm,* 713 F.2d at 554.

7. The defendant challenges as duplicative more than sixty of the plaintiff's billing entries. Here are just a few examples from the defendant's list: Warner and Bixler bill for both reviewing a scheduling conference order, reviewing Rule 26 disclosures, reviewing proposed protective order, and reviewing answer to second amended complaint; Warner and Graham bill for both appearing at depositions of Robinson, Tishhauser and Skinner; and Warner, Bixler and Graham all bill for preparing and appearing at trial.

713 F.2d at 554. The plaintiff's fee itemization includes some hours that fall into the category of background research. For example, the plaintiff seeks thirteen hours for research before drafting a complaint alleging a single count of pregnancy discrimination and another count for intentional infliction of emotional distress. The plaintiff's attorneys bill approximately sixty hours for researching the opposition to summary judgment. The law surrounding the plaintiff's pregnancy discrimination claim was well-settled, and the defendant's summary judgment attack focused principally on the evidence.

Finally, the court believes that for some tasks the plaintiff's counsel have billed hours in excess of the norm. Rather than going through the billing statement and identifying each of the instances of the billing of excessive hours,[8] the billing for duplicative services and the billing for background research, the court will reduce the requested hours by thirty percent. After these deductions, the court calculates Mr. Warner's fees to be $28,000 (224 hours times $125.00), Ms. Bixler's fees to be $22,655 (197 hours times $115.00) and Ms. Graham's fees to be $10,920 (15 hours times $50.00, plus 113 hours times $90.00), for a total fee award of $61,575.

■ The court next must determine whether it should adjust this lodestar figures to reflect the plaintiff's overall success. The Supreme Court's decision in *Hensley* contemplates such an adjustment:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... The result is what matters.
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.... Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or

whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

461 U.S. at 435–36, 103 S.Ct. at 1940–41. A court is without a precise rule or formula in making this determination. A district court is expected, however, to "make a qualitative assessment" in determining whether the less-than-perfect results still deserve full recovery of fees or whether the results qualify as a limited success deserving a reduction in fees. *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir.1995). This proportionality inquiry remains a valid consideration in mixed-motive verdicts under § 2000e–5(g)(2)(B). *Sheppard v. Riverview Nursing Center*, 88 F.3d 1332, 1338–39 (4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996); *see Snell v. Reno Hilton Resort*, 930 F.Supp. 1428, 1432 (D.Nev.1996); *Hannon v. Chater*, 900 F.Supp. at 1285–86.

In *Snell*, the district court evaluated the plaintiff's success there as follows:

> Ms. Snell, the prevailing party, has achieved only partial or limited success. The jury did find that defendant discriminated against plaintiff. Because the jury also concluded that the adverse employment actions would have occurred even absent the impermissible discrimination, as a matter of law plaintiff was not entitled to damages or back pay. Because this litigation only concerned the past actions of the defendant towards this plaintiff, and the plaintiff no longer works for the defendant, injunctive relief was not appropriate. Plaintiff's success is nothing more than the satisfaction of having her belief that she was the victim of illegal employment discrimination validated by the jury's verdict. Under *Hensley*, if the court were consider only the "level of success" achieved by plaintiff, the fee award would be *de minimis*.

930 F.Supp. at 1431. Concerned that a strict application of *Hensley* would frustrate the congressional intent behind § 2000e–

---

**8.** One example of excessive hours is the billing for more than one hundred hours for trial preparation.

5(g)(2)(B), the district court in *Snell* followed the approach taken by a sister court in its circuit and characterized the plaintiff's result as "half a victory" and reduced the fees by fifty percent. 930 F.Supp. at 1432 (citing *Hannon v. Chater,* 900 F.Supp. at 1286).

As in *Snell,* it is true here that Gudenkauf recovered nothing on her claims for lost wages and benefits, front pay, and compensatory damages. In its prior order, the court found that the plaintiff brought this suit not only to recover damages but to vindicate her belief, to recover her self-esteem, to prove to Stauffer's management that pregnancy discrimination had occurred, and to minimize a negative mark in her employment history.[9] In these respects, the mixed-motive verdict was a success for the plaintiff. Both sides presented in their favor strong evidence through credible witnesses. Consequently, the court cannot say this case was more about the plaintiff's job performance than it was the discriminatory treatment of the plaintiff. In fact, the issues of job performance and discrimination were closely intertwined. The plaintiff alleged and offered evidence that after her pregnancy her supervisors treated her differently and changed the terms and conditions of her employment to her disadvantage. The court cannot dismiss as slight the success the plaintiff had in proving that Stauffer's discrimination was a motivating factor in her discharge. Balancing the public policy furthered by §§ 2000e–2(m) and 2000e–5(g)(2)(B) and the degree of success that the plaintiff achieved through this litigation, the court reduces the lodestar figure by fifty percent.

The court's analysis above incorporates implicitly most of the other *Johnson* factors relevant in adjusting a fee award. The one factor not discussed but argued by the defendant is the plaintiff's refusal of the defendant's settlement offer of $7,500 before trial. Contrary to the defendant's opinion, this is not a case where the plaintiff went to trial knowing that she was "very highly likely to receive nothing." As stated before, the evidence was conflicting on the relevant issues, and there was more than enough evidence for the jury to return a pretext verdict for the plaintiff. The defendant has not persuaded the court that its settlement offer was reasonable considering the costs and fees that the plaintiff had already incurred in litigating her claims. Finally, the court is not inclined to reduce the lodestar figure any further based on this factor or any others, as it believes the present award is both appropriate and reasonable under the circumstances.

As to the plaintiff's requested costs for filing fee, copies, depositions, other fees and trial notebooks, the parties are directed to follow the procedure outlined in D.Kan.Rule 54.1(a).

IT IS THEREFORE ORDERED that the plaintiff is awarded attorneys' fees in the amount of $30,787.50, based on the following fee calculations: Mr. Warner's fees of $14,000 (112 hours times $125.00), plus Ms. Bixler's fees of $11,327.50 (98.5 hours times $115.00), plus Ms. Graham's fees of $5,460 (7.5 hours times $50.00, plus 56.5 hours times $90.00).

---

9. The defendant attacks this finding as bare speculation unsupported by the record. The court recalls testimony by the plaintiff that she considered her trial as the first opportunity to tell management her side and that she had lost confidence in herself as a result of the firing. The plaintiff's mother testified similarly and added that she and the plaintiff were hoping this litigation would provide some closure to a difficult time in the plaintiff's life. Finally, the court can fully appreciate that a young working woman, like the plaintiff, would not want an employment history that was tarnished by a termination for cause.