**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 29 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

MICHAELA A. GUDENKAUF,

      Plaintiff-Appellant - Cross-
      Appellee,

v.

STAUFFER COMMUNICATIONS,
INC.,

      Defendant-Appellee - Cross-
      Appellant.

No. 97-3063
& 97-3068

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 94-CV-4228)

---

Alan G. Warner (Amy C. Bixler with him on the brief) of Warner, Bixler &
Associates, L.L.C., Topeka, Kansas, for Plaintiff-Appellant - Cross-Appellee..

Michael W. Merriam of Gehrt & Roberts, Chartered, Topeka, Kansas, for
Defendant-Appellee - Cross-Appellant..

---

Before **SEYMOUR**, Chief Judge, **McWILLIAMS**, and **MURPHY**, Circuit
Judges.

---

**SEYMOUR**, Chief Judge.

Michaela A. Gudenkauf brought this discrimination action against her former employer, Stauffer Communications, Inc., alleging that she was terminated in violation of several federal statutes. A jury found that Stauffer's firing of Ms. Gudenkauf was motivated in part by her pregnancy, but that she would have been terminated in any event. Because of this determination, 42 U.S.C. § 2000e-5(g)(2)(B) precluded Ms. Gudenkauf from an award of reinstatement, back pay, or damages, but the district court held she was entitled to an award of attorney's fees and costs. After determining the lodestar, the district court reduced the amount to reflect the degree of Ms. Gudenkauf's overall success on the mixed motive claim. Both parties appeal the fee award and we affirm.

I.

In her complaint, Ms. Gudenkauf alleged that her termination was the result of sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), pregnancy discrimination in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (PDA), and disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (ADA). Ms. Gudenkauf also asserted a claim under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* (FMLA), and state law claims for intentional infliction of emotional distress. The district court dismissed the state law claims and granted

Stauffer's motion for summary judgment on the claims under the ADA and the FMLA. Ms. Gudenkauf prevailed before the jury on her mixed motive PDA claim and then she moved for costs and attorney's fees. Stauffer argued to the district court that Ms. Gudenkauf was not a prevailing party entitled to a fee because she had obtained no relief. Alternatively, Stauffer contended that the court in its discretion should award no fee because Ms. Gudenkauf had recovered nothing and had served none of the interests supporting a fee award to a prevailing plaintiff articulated by the Supreme Court in *Farrar v. Hobby*, 506 U.S. 103 (1992). Stauffer also argued that Ms. Gudenkauf had failed to provide proof in support of her fee claims and that the amounts requested were grossly excessive.

The district court rejected Stauffer's argument that Ms. Gudenkauf was not a prevailing party and its argument that Ms. Gudenkauf had only a nominal victory resulting in special circumstances that justified the denial of any fee award. *See Gudenkauf v. Stauffer Communications, Inc.*, 936 F. Supp. 805 (D. Kan. 1996) (*Gudenkauf I*). In a subsequent order, the court calculated a lodestar amount under *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), eliminating hours spent on unsuccessful arguments not directly related to the pregnancy discrimination claim, and further reducing the requested hours by thirty percent to account for duplicated services, background research, and hours in excess of the

norm.  The court then balanced the public policy furthered by the pregnancy discrimination and mixed motive statutes under which Ms. Gudenkauf prevailed with the degree of her overall success, and reduced the lodestar figure by fifty percent.  *See Gudenkauf v. Stauffer Communications, Inc.*, 953 F. Supp. 1237, 1245 (D. Kan. 1997) (*Gudenkauf II*).

On appeal, Stauffer argues that the district court erred in placing the burden on it to show extraordinary circumstances justifying the denial of any fee award, and that Ms. Gudenkauf is not entitled to a fee in any event because she obtained only a technical victory.  Stauffer also contends that Ms. Gudenkauf failed to present evidence to support the requested hourly rates and failed to submit the records necessary to separate out the hours devoted to unsuccessful claims. Finally, Stauffer argues that the fee award was excessive in view of the fact the Ms. Gudenkauf "obtained nothing but a moral victory."  Br. of Aplt. at 20.  Ms. Gudenkauf cross-appeals, arguing that the terms of section 2000e-5(g)(2)(B) specifically allowing an award of attorney's fees for prevailing on a mixed motive claim precludes the district court from making any reduction based on the degree of plaintiff's success.

II.

In resolving this appeal, we first address Stauffer's claim that the district

court should have followed the Supreme Court's analysis in *Farrar* and denied

any award of attorney's fees based on Ms. Gudenkauf's failure to recover

monetary damages. For the reasons set forth below, we find Stauffer's analysis to

be inconsistent with the proper reading of *Farrar* and irreconcilable with the Civil

Rights Act of 1991.

In *Farrar*, the Supreme Court considered the reasonableness of an award of

attorney's fees under 42 U.S.C. § 1988[1] to a party who wins only nominal

damages in an action under 42 U.S.C. § 1983 alleging the denial of procedural

due process. Significantly, the Court began its discussion with the observation

that "'the basic purpose of a § 1983 damages award should be to compensate

persons for injuries caused by the deprivation of constitutional rights.'" *Id.* at 112

(quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)). *See also id.* at 114-15.

The plaintiffs in *Farrar* had recovered only nominal damages after

extended litigation and were awarded $280,000 in attorney's fees by the district

court. The court of appeals reversed the award, ruling that the plaintiffs'

"technical victory" was "so insignificant . . . as to be insufficient to support

---

[1]Section 1988 provides in relevant part:

In any action or proceeding to enforce a provision of section 1981,
1981a, 1982, 1983, 1985, and 1986 of this title . . ., the court, in its
discretion, may allow the prevailing party, other than the United
States, a reasonable attorney's fee as part of the costs. . . .

prevailing party status." *Farrar*, 506 U.S. at 108 (quoting *Estate of Farrar v. Cain*, 941 F.2d 1311, 1315 (5th Cir. 1991)). The Supreme Court reversed the court of appeals and held that "a plaintiff who wins nominal damages is a prevailing party under § 1988." *Id.* at 112. Nevertheless, in a five-to-four decision without briefing on the issue, *see id.* at 123 (White, J., dissenting), the Court further held that the plaintiffs were not entitled to an award of fees because the only reasonable fee in such circumstances "is usually no fee at all." *Id.* at 115. Central to the Court's ruling was its assumption that compensation was the primary purpose of the suit. The Court therefore held that in a section 1983 action, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* at 115. In holding that no fee was appropriate, the Court observed that "[t]his litigation accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." *Id.* at 114 (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1957)).

Yet even under *Farrar* it is clear that not every non-monetary victory precludes a fee award. Justice O'Connor's special concurrence is significant in this regard because her vote made the majority and thus constitutes the opinion of the court on what constitutes a "purely technical" victory. *See Phelps v.*

-6-

*Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  Justice O'Connor agreed with

the plurality opinion that "'a technical victory may be so insignificant . . . as to be

insufficient' to support an award of attorney's fees," *id.* at 117 (O'Connor, J.,

concurring), and that "when the plaintiff's success is *purely* technical or de

minimis, no fees can be awarded," *id.* (emphasis added).  She acknowledged,

however, that section 1988 "is a tool that ensures the vindication of important

rights, even when large sums of money are not at stake, by making attorney's fees

available under a private attorney general theory." *Id.* at 122.  She then listed

factors that would support recovery of attorney's fees despite recovery of only

nominal damages including the "significance of the legal issue" on which the

plaintiff prevails, *id.* at 121, or accomplishment of some public goal, *id.*  She

concluded that no fee was appropriate in *Farrar* because she discerned no

significant legal issue or public purpose served by Mr. Farrar's success.[2]  As

narrowed by Justice O'Connor's concurring opinion, therefore, *Farrar* essentially

holds that failure to recover more than nominal damages in a section 1983 action

is a Pyrrhic or technical victory precluding an award of attorney's fees under

---

[2]Justice O'Connor and the court were no doubt influenced by the
narrowness of Mr. Farrar's constitutional claim (which was based on conduct of
public officials resulting in his indictment), the lack of a request for injunctive
relief, and the resulting jury verdict which was acknowledged as "regrettably
obtuse" and which awarded only one dollar and pointed to no discernible public
purpose after ten years of litigation.

section 1988 *only* when the action serves no public purpose.

Furthermore, *Farrar* must be applied consistently with 42 U.S.C. § 2000e-5(g)(2)(B), the statute governing the award of an attorney's fee in a mixed motive case such as this one, *i.e.* a mixed motive case in which a plaintiff proves illegal discrimination was a motivating factor in the adverse employment action, *see id.* § 2000e-2(m), but the fact finder determines the employer would have taken the adverse action even absent the illegal motive. In 1989, the Supreme Court held that "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989). Partly in response to the *Price Waterhouse* ruling, under which an employer could avoid liability altogether even if illegal discrimination factored into his employment decision, Congress passed the Civil Rights Act of 1991.[3]

---

[3] The *Price Waterhouse* case was one of several Supreme Court decisions which Congress addressed in the Civil Rights Act of 1991. "The bill responds to a number of recent decisions by the United States Supreme Court that sharply cut back on the scope and effectiveness of . . . important [civil rights laws that ban discrimination in employment]. H.R. REP. NO. 102-40(II), at 2, *reprinted in* 1991 U.S.C.C.A.N. 694. In explaining the need for and the purpose of the legislation, the legislative history states:

> Section 2 of the legislation sets forth Congress' findings that the Supreme Court's recent employment discrimination decisions have cut back dramatically on the scope and effectiveness of civil

(continued...)

Section 107 of the 1991 Act overturned *Price Waterhouse* on this point by amending 42 U.S.C. § 2000e-2 to make clear that an employer is liable for a violation of Title VII upon proof that an impermissible motive played a role in the challenged action.  The new subsection states: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).

The 1991 Act then addressed the award of relief for victims of unlawful employment practices under section 2000e-2(m) in those cases where the employer proves that discriminatory motives, although present, did not cause the adverse employment action.  Congress thus amended 42 U.S.C. § 2000e-5(g) to add a new part (2)(B) providing as follows:

---

[3](...continued)
rights protections, and that as a result, existing protections and remedies are not adequate to deter unlawful discrimination or to compensate victims of intentional discrimination.

      Section 2 of the legislation also sets forth Congress's dual purposes: to respond to the Court's recent decisions by restoring the civil rights protections that were so dramatically limited, and to strengthen existing remedies to provide more effective deterrence and ensure compensation commensurate with the harms suffered by victims of intentional discrimination.

H.R. REP. NO. 102-40(I), at 18 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 556.
*See also* 42 U.S.C. § 1981 note.

(**B**) On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--

(**i**) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

(**ii**) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e-5(g)(2)(B).  Subparagraph A, to which the above-quoted material refers, in turn provides that the court may not award injunctive relief or back pay with respect to any employment action taken for a nondiscriminatory reason.  *See id.* § 2000e-5(g)(2)(A).

"Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896 (1984).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 117 S. Ct. 843, 846 (1997).  In addition, we note that sections 2000e-2(m) and 20003-5(g)(2)(B) constitute remedial legislation which we are to construe liberally.  *Richardson v. Frank*, 975 F.2d 1433, 1436 (10th Cir. 1991) (quoting *Peterson v. City of Wichita*, 888 F.2d 1307, 1309 (10th Cir. 1989)).

-10-

Indeed, the legislative history of the 1991 Act reiterated Congressional intent that the civil rights laws are to be broadly construed and revealed Congressional dismay with recent Supreme Court decisions Congress viewed as "deviat[ing] repeatedly from this principle and giv[ing] unduly narrow constructions to civil rights statutes." *See* H.R. REP. NO. 102-40(I) at 87-88 (1991), *reprinted in* 1991 U.S.C.C.A.N. at 625-26. The House Report pointed out that "[a]s a result, Congress has been required to pass legislation to override these interpretations," and that when "Congress has done so, the legislative history is replete with references to Congress's intention that civil rights laws are to be broadly construed consistent with their remedial purpose." *Id.*

As set out above, section 2000e-5(g)(2)(B)(i) provides that the court *may* grant attorney's fees in the described circumstances.[4] We agree with the parties

---

[4] The general fee provision applicable to actions or proceedings under section 2000e-5 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). Subsection (g)(2)(B) differs from the general fee provision in four respects: (1) it does not contain the language found in subsection (k) expressly providing that a fee award is a matter within the court's discretion; (2) it likewise does not contain the language found in subsection (k) expressly providing that the fee must be reasonable; (3) it authorizes an award to an individual "who proves a violation under section 2000e-2(m)" while subsection (k) authorizes fees to "a prevailing party"; and (4) it provides that a court may award attorney's fees *and* costs, while subsection (k) states that fees are to be awarded as part of the costs.

The parties do not argue that the omission in subsection (g)(2)(B) of an express reference to the court's discretion in awarding fees or to the requirement

(continued...)

-11-

that this language commits the award of fees to the district court's discretion. However, we disagree with Stauffer as well as with the Fourth Circuit Court of Appeals, both of whom assert that *Farrar* should be applied in a mixed motive case to deny all but a nominal fee recovery simply because a mixed motive plaintiff does not recover money damages or obtain injunctive relief. *See Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332 (4th cir. 1996).

As noted above, Justice O'Connor's concurring opinion in *Farrar* recognizes that recovery may be had even where actual damages are minimal or nonexistent if plaintiff succeeds in serving an important public purpose. An examination of the language and legislative history of section 2000e-2(m) and subsection 2000e-5(g)(2)(B) clearly demonstrates Congress' conclusion that a plaintiff serves such a purpose when she proves impermissible discrimination was a factor in her termination.

In explaining the need to overturn the decision in *Price Waterhouse*, the

---

[4](...continued)
that the fees be reasonable requires that the two statutes be construed differently in these two regards. We agree and conclude that the award of fees is committed to the court's discretion and that the fee award must be reasonable. The district court rejected Stauffer's argument that Ms. Gudenkauf was not entitled to any fee because she was not a prevailing party under subsection (k), pointing out that subsection (g)(2)(B) expressly authorizes an award of fees to one in Ms. Gudenkauf's position. *See Gudenkauf I*, 936 F. Supp. at 807-08. Stauffer wisely does not pursue this argument on appeal. Finally, we address the subsections' differing treatment of fees with respect to costs *infra* in text in our discussion of Stauffer's argument with respect to its settlement offer.

legislative history of the 1991 Act states Congress' view that "[t]he effectiveness

of Title VII's ban on discrimination on the basis of race, color, religion, sex or

national origin has been severely undercut by" the Supreme Court's ruling.  H.R.

REP. 102-40(I) at 45, 1991 U.S.C.C.A.N. at 583.

> The Court's holding in *Price Waterhouse* severely undermines protections against intentional employment discrimination by allowing such discrimination to escape sanction completely under Title VII.  Under this holding, even if a court finds that a Title VII defendant has clearly engaged in intentional discrimination, that court is powerless to end that abuse if the particular plaintiff who brought the case would have suffered the disputed employment action for some alternative, legitimate reason.
> The impact of this decision is particularly profound because the factual situation at issue in *Price Waterhouse* is a common one.

H.R. REP. NO. 102-40(II) at 18 (1991), *reprinted in* 1991 U.S.C.C.A.N. at 711.

The 1991 Act "responds to *Price Waterhouse* by reaffirming that any reliance on

prejudice in making employment decisions is illegal." *Id.* at 695.

In explaining the proposed legislation to overturn the *Price Waterhouse*

decision, the Committee stated

> it is important to remember the dual purpose of private enforcement of Title VII.  On the one hand, the object is to make whole the individual victims of unlawful discrimination . . . But this is only part of it.  *The individual Title VII litigant acts as a "private attorney general" to vindicate the precious rights secured by that statute.  It is in the interest of American society as a whole to assure that equality of opportunity in the workplace is not polluted by unlawful discrimination.  Even the smallest victory advances that interest.*

H.R. REP. NO. 102-40(I) at 46-47, 1991 U.S.C.C.A.N. at 584-85 (quoting Jane

Lang, former General Counsel of the United States Department of Housing and Urban Development) (emphasis added).

The legislative history also sheds light on Congressional intent with respect to the award of attorney's fees to successful civil rights litigants. "Both of the statutory goals described above--encouraging private enforcement and making victims whole--are dependent upon the ability of such victims to find and retain competent counsel to handle their claims. Title VII's fee-shifting provision makes this possible." H.R. REP. NO. 102-40(I) at 75, 1991 U.S.C.C.A.N. at 613. Nonetheless, the Committee observed with alarm that "[d]espite Title VII's fee-shifting provision, the evidence suggests that plaintiffs are encountering substantial difficulty in obtaining legal representation." *Id.*

> Several recent Supreme Court decisions have contributed to the difficulty discrimination victims currently face in finding attorneys who will take their Title VII cases, by making the recovery of attorneys' fees uncertain even for the most meritorious claims. . . .
> *The Committee reaffirms the policy that unless discrimination victims can find lawyers to take their cases, they cannot be made whole for their injuries, employers will not be held responsible for violations of the statute, and the compelling public interest in eliminating discrimination cannot be served.*

*Id.* at 614-15 (emphasis added).

It is therefore clear that Congress' stated purpose in enacting the statutes governing mixed motive cases supports an award of attorney's fees in those cases notwithstanding the lack of a damages award. A verdict for a plaintiff in a mixed

motive Title VII case constitutes a victory on a significant legal issue that furthers a public goal, a goal that is advanced notwithstanding the fact that a plaintiff recovers no damages. As Justice O'Connor acknowledged in her concurrence in *Farrar*, "[w]hen construing a statute, this Court is bound by the choices Congress has made, not the choices we might wish it had made." *Farrar*, 506 U.S. at 118 (O'Connor, J., concurring). Accordingly, we conclude that recovery of damages is not a proper factor upon which to assess the propriety of granting a fee award in a mixed motive case. Moreover, we agree with the district court that, as under section 2000e-5(k), a plaintiff who prevails under section 2000e-2(m) should ordinarily "'be awarded attorney's fees in all but special circumstances.'" *Gudenkauf I*, 936 F. Supp. at 808 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994)).

III.

We now turn to Stauffer's arguments in support of its position that the district court erred in awarding Ms. Gudenkauf fees. Stauffer contends that the district court should not have awarded any fee at all, and alternatively that the court failed to require Ms. Gudenkauf to present sufficient evidence to support her fee request, failed to address adequately the factors relevant to assessing a reasonable fee, and failed to take account of Stauffer's pretrial settlement offer.

-15-

Stauffer also urges that the amount of the fee awarded was grossly excessive under the circumstances. To the extent that these arguments are in essence a reformulation of Stauffer's contention that the *Farrar* approach is applicable and that no fee is therefore appropriate, we reject them without further discussion. We address Stauffer's remaining points briefly.

In *Farrar*, the Court addressed a plaintiff's failure to recover monetary damages in the context of assessing the *reasonableness* of a fee award under section 1988. Stauffer argues in addition that this factor is a special circumstance which makes the award of *any* fee unjust. In so doing, Stauffer blurs the line between these two issues when in fact they are separate inquiries. Under the generally applicable approach to a fee request by a civil rights plaintiff, a court must first assess whether special circumstances would make any award unjust. This standard arose in the case of *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400 (1968), in which the Supreme Court considered Title II, a fee statute virtually identical to that in Title VII.

> Relying primarily on the intent of Congress to cast a Title II plaintiff in the role of "a 'private attorney general,' vindicating a policy that Congress considered of the highest priority," we held that a prevailing plaintiff under Title II "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm.*, 434 U.S. 412, 416-17 (1978) (quoting *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400,

402 (1968)). Upon determining that the award of a fee is proper under *Newman*, the court must then fix a reasonable fee.

In the district court and on appeal, Stauffer argued that no fee should be awarded under this standard because Ms. Gudenkauf received at most a nominal or moral victory. The district court rejected this contention and we agree. Congress has clearly indicated that redress is nonetheless appropriate in these circumstances to avoid "send[ing] a message that a little overt sexism or racism is okay, as long as it was not the only basis for the employer's action." H.R. REP. NO. 102-40(I) at 47, 1991 U.S.C.C.A.N. at 585 (citation omitted). Title VII's statutory purposes are undermined when an employer is not sanctioned for his discriminatory conduct and a victim of discrimination receives no redress. In a mixed motive case in which the legal motive predominates, the plaintiff never recovers monetary damages on her successful claim and often, as here, injunctive relief will not be appropriate because the plaintiff's employment has been terminated. Thus, a fee award is the only form of redress available to make the victim whole for vindicating society's interest in a discrimination-free workplace. Accordingly, we hold that the nature of Ms. Gudenkauf's victory in this mixed motive case is not a special circumstance that would make an award of fees unjust.

Stauffer also argues that Ms. Gudenkauf did not submit sufficient evidence

to support her requested hourly rates or to allow the district court to properly assess the number of reasonable hours. We have reviewed the record on appeal in light of these contentions and find them to be without merit. "The establishment of hourly rates in awarding attorney's fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987). A court "may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1493 (10th Cir. 1994) (quoting *Bee v. Greaves*, 910 F.2d 686, 689 n.4 (10th Cir. 1990). The district court here properly assessed the prevailing market rates as well as "the experience, skill, reputation and performance of the plaintiff's attorneys," in setting the hourly rates. *Gudenkauf II*, 953 F. Supp. at 1241.

Stauffer contends that Ms. Gudenkauf's time records were inadequate to allow the court to separate out hours spent on unrelated claims, or to weed out duplicated effort. The district court ruled to the contrary, stating that it had "no difficulty identifying and estimating certain billed hours as simply not attributable to the prosecution of the plaintiff's mixed-motive pregnancy claim." *Id*. at 1242. After carefully scrutinizing Ms. Gudenkauf's time entries, the court stated that "[r]ather than going through the billing statement and identifying each of the instances of the billing of excessive hours, the billing for duplicative services and

the billing for background research, the court will reduce the requested hours by thirty percent." *Id.* at 1244. We have expressly approved this practice if the district court provides sufficient reasons for the general reduction. *See Mares*, 801 F.2d at 1203. The court here explained in some detail its reasons for the reduction and we find no abuse of discretion in its method of determining a reasonable number of billable hours.

We likewise find no merit in Stauffer's assertion that the court abused its discretion in failing to address specifically each of the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), and intended by Congress to govern the fee determination, *see Blum*, 465 U.S. at 893-94. The district court clearly understood that the *Johnson* factors were to guide its fee determination and stated that its "analysis . . . incorporates implicitly most of the other *Johnson* factors relevant in adjusting a fee award." *Gudenkauf II*, 953 F. Supp. at 1245. We have never held that a district court abuses its discretion by failing to specifically address each *Johnson* factor. To the contrary, we have stated that not all of them need be considered. *See Cooper v. Singer*, 719 F.2d 1496, 1500 n.6 (10th Cir. 1983) (citing *Francia v. White*, 594 F.2d 778 (10th Cir. 1979)).

> "[W]hile the factors set out in *Johnson* are useful, some are seldom applicable, and none is self-actuating: 'Simply to articulate those twelve factors . . . does not itself conjure up a reasonable dollar figure in the mind of a district judge. A formula is necessary to

translate the relevant factors into terms of dollars and cents."

*Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C. Cir. 1980)).  The district court here followed the formula set out in *Ramos*, which incorporates many of the *Johnson* factors and which this circuit intended to "provide guidance in assessing and applying the relevant factors to produce a monetary award."  *Id.*

Finally, we address Stauffer's complaint that the district court did not reduce the fee award on the basis of Stauffer's pretrial settlement offer of $7,500.  In rejecting Stauffer's argument, the court stated:

> Contrary to the defendant's opinion, this is not a case where the plaintiff went to trial knowing that she was "very likely to receive nothing."  As stated before, the evidence was conflicting on the relevant issues, and there was more than enough evidence for the jury to return a pretext verdict for the plaintiff.  The defendant has not persuaded the court that its settlement offer was reasonable considering the costs and fees that the plaintiff had already incurred in litigating her claims.

*Gudenkauf II*, 953 F. Supp. at 1245.

The court did not abuse its discretion by denying a reduction on the basis of the settlement offer, particularly in light of the language of the statute and the discussion of settlement offers in the legislative history of the 1991 Act.  Rule 68 of the Federal Rules of Civil Procedure provides that if a defendant makes a pretrial settlement offer which the plaintiff rejects, and the plaintiff thereafter prevails on the merits but recovers less than the amount of the settlement offer,

-20-

the plaintiff must pay the *costs* incurred after the offer was made. As we pointed out *supra* n.2, subsection (g)(2)(B) of Title VII, added in 1991, provides that a court may award attorney's fees *and* costs, while subsection (k) states that fees are to be awarded as part of the costs.

The legislative history of the 1991 Act indicates that Congress' decision to separate costs and fees was deliberate and intended to further its Title VII goals. As the legislative history points out, "statutes which refer to fees *as part of* costs have been interpreted to deprive many successful plaintiffs of such fees incurred after rejecting a pretrial offer of judgment made by the defendant. In contrast, statutes which provide for fees *separate* from costs have been interpreted to allow plaintiffs to recover such fees." H.R. REP. NO. 102-40(I) at 82, 1991 U.S.C.C.A.N. at 620. In fact, the Supreme Court held in *Marek v. Chesney*, 473 U.S. 1 (1985), that under Rule 68, a successful civil rights plaintiff could be denied attorney's fees otherwise available under subsection (k). The legislative history of the 1991 Act specifically disapproved of the *Marek* decision and proposed to amend subsection (k) to avoid its application. "*Marek* is particularly problematic in the context of Title VII, because it may impede private actions, which Congress has relied upon for enforcement of the statute's guarantees and advancement of the public's interest." H.R. REP. NO. 102-40(I) at 82, 1991 U.S.C.C.A.N. at 620. Although subsection (k) ultimately remained unchanged in

-21-

this regard, the proposed amendment was adopted in the language of subsection (g)(2)(B). Congress therefore clearly did not intend a district court to reduce a mixed motives plaintiff's fee award on the basis of a rejected pretrial settlement.

IV.

Finally, we address Ms. Gudenkauf's cross-appeal in which she claims it was error for the district court to reduce the amount of the fee award by fifty percent based on an assessment of the degree of her overall success on her mixed motive PDA claim. Ms. Gudenkauf contends that section 2000e-5(g)(2)(B) contains a built-in limitation on attorney's fees in a mixed motive case where a plaintiff fails to prove that the discrimination caused her termination by providing that only those fees and costs "demonstrated to be directly attributable . . . to the pursuit" of the mixed motive claim are to be awarded. She then asserts that because of this statutory limitation, a "proportionality" analysis based on degree of success should not be applied to reduce the award further. *See Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983). We are not persuaded.

At trial, Ms. Gudenkauf claimed that even if there were mixed motives at work in her termination, she was fired because of the discriminatory motive, a claim which the jury rejected. She was therefore not fully successful on her section 2000e-2(m) claim and we find nothing in subsection (g)(2)(B) to indicate

-22-

that Congress did not intend for fees to be awarded based on degree of success on the entire section 2000e-2(m) claim, as they would be had the plaintiff convinced the jury that she was terminated because of the discrimination.[5] *See Hensley*, 461 U.S. at 436 (degree of success critical factor in determining reasonable attorney's fee award); *id.* at 441 (Brennan, J., dissenting) (same).

The legislative history of the Civil Rights Act of 1991 indicates that Congress intended to restore the law that applied prior to *Price Waterhouse* in cases such as *Bibbs v. Block*, 778 F.2d 1318 (8th Cir. 1985) (en banc), which the House Report specifically cited. *See* H.R. REP. No. 102-40(I) at 48, 1991 U.S.C.C.A.N. at 586. In *Bibbs*, the Eighth Circuit held that where a plaintiff proved race discrimination was a factor in an adverse employment decision, "[a] defendant's showing that the plaintiff would not have gotten the job anyway does not extinguish liability. It simply excludes the remedy of retroactive promotion or

---

[5] 42 U.S.C. § 2000e-5(g)(2)(B) specifically provides that a mixed motive plaintiff who does not demonstrate that the illegal motive caused her termination should receive costs and fees "attributable only to pursuit of a claim under section 2000e-2(m) of this title." 42 U.S.C. § 2000e-2(m) provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." The statutes, therefore, do not by their terms account for degree of overall success because in some mixed motive cases, the discriminatory motive will be determined to have caused the adverse employment action. A plaintiff who fails to establish causation should not in most cases be rewarded to the same extent as one who does.

reinstatement." *Id.* at 1323. The court remanded the case for determination of a reasonable attorney's fee and said that "in determining a reasonable fee, an adjustment based on the extent to which Bibbs has succeeded will be appropriate." *Id.* at 1324.

We are persuaded that Congress did not intend to place "mixed-motive plaintiffs in a more favorable position than plaintiffs for whom discrimination is the sole cause of an adverse employment decision." *Sheppard*, 88 F.3d at 1338. As such, we agree in part with the district court's formulation of the proportionality analysis in a mixed motive case:

> In tailoring an award of fees, the court's inquiry into a mixed-motive plaintiff's degree of success is not . . . the traditional proportionality inquiry used when a plaintiff is awarded some damages. The statute does not preclude a mixed-motive plaintiff from recovering fees, but it does preserve a court's discretion to factor in the degree of a plaintiff's success. . . . [T]he proportionality inquiry in a mixed-motive case expands to consider [how much] the verdict serves public purposes,[6] as in cases which "evidence a widespread or intolerable animus" by the employer as opposed to cases which "illustrate primarily the plaintiff's unacceptable conduct." In other words, the court must assess how successful the plaintiff was in proving "that an employer's discrimination, and not the employee's own misconduct, drove the employment decision." This inquiry

---

[6]While we essentially agree with the district court's analysis of the proportionality inquiry, we emphasize that the Civil Rights Act of 1991 makes it clear that a plaintiff serves an important public purpose any time she establishes that improper discrimination played a role in an adverse employment action taken against her. As such, the proportionality inquiry may take account of the degree to which the plaintiff achieves a public purpose by applying the reasonableness analysis governing fee awards in other discrimination cases.

-24-

should also encompass the extent to which the mixed-motive verdict may have served one or more of the plaintiff's legitimate purposes for filing the suit and pursuing the litigation through trial.

*Gudenkauf II*, 953 F.Supp. at 1239 n.1.[7]  This inquiry simply reflects that all mixed motive claims, like all other claims of discrimination, are not created equal and not every proven mixed motive claim warrants an award based on the full extent of attorney time devoted to it.

Ms. Gudenkauf does not assert that the fifty percent reduction entered by the district court fails appropriately to reflect her overall degree of success on the entire mixed motive claim, and given that she failed to establish that discriminatory motives caused her termination, we find no indication that the district court based the reduction on an impermissible factor or otherwise abused its discretion in determining the fee Ms. Gudenkauf should be awarded for prevailing on her mixed motive claim.

## IV.

We **AFFIRM** the district court's ruling awarding attorney's fees to Ms.

---

[7]Although the district court relied heavily in formulating this test on the Fourth Circuit's analysis in *Sheppard*, we reiterate that the district court did not, and we do not here, adopt *Sheppard* for the proposition that a mixed motive plaintiff who does not prove discrimination caused the adverse employment action may be granted a nominal fee award merely because no other relief is granted on the claim.  As discussed above, such a result is inconsistent both with Justice O'Connor's concurrence in *Farrar* and with the Civil Rights Act of 1991.

Gudenkauf based on a fifty percent reduction to reflect the overall success of her claim.